BRINK *v.* STATE MUTUAL RODDED FIRE INSURANCE COM-
PANY OF MICHIGAN.

1. INSURANCE—MUTUAL FIRE INSURANCE COMPANY—MEMBERSHIP—
NOTICE OF ASSESSMENT—SUSPENSION.

Grantees of vendors under land contract requiring purchasers to
keep premises insured *held*, not members of mutual fire insur-
ance company subject to assessment nor entitled, as of right,
to notice thereof or of suspension for nonpayment, where
policy, carried in name of purchasers, had loss payable clause
running to the holder of deed as his contract interest might
appear.

2. SAME—FIRE INSURANCE—BENEFICIAL INTEREST—ESTOPPEL.

Beneficial interest in mutual fire insurance company policy does
not entitle land contract vendors' grantees, not members of
the company, as holders of the deed, to notice of suspension
of insurance because of purchasers' default; nor may insur-
ance so suspended be held payable to such grantees by estop-
pel, waiver or subsequent reformation.

3. SAME—STATEMENT OF OWNERSHIP.

Following transfer of vendors' interest in premises insured in
mutual fire insurance company and sold under land contract,
statement of ownership made to company by one of grantees
in which he accepted insurance and guaranteed payment of
assessments and liabilities under policy, which statement was
received and retained but not approved by the company but
no notice or disapproval sent him except statement that trans-
fer of policy was unnecessary, *held*, insufficient to render
grantees liable to assessments or relieve purchasers from such
liability.

Appeal from Allegan; Miles (Fred T.), J. Sub-
mitted October 3, 1934. (Docket No. 58, Calendar
No. 37,941.) Decided January 7, 1935.

Bill by Marienus Brink and wife and Ernest A. Carpenter and wife against State Mutual Rodded Fire Insurance Company of Michigan, a Michigan corporation, to reform a fire insurance policy and recover loss sustained by fire. Decree for plaintiffs Carpenter. Defendant appeals. Reversed and bill dismissed.

*Roy M. Watkins* and *Laurence W. Smith,* for plaintiffs Carpenter.

*Leibrand & Leibrand,* for defendant.

WIEST, J. Elmer G. Carpenter and wife owned a farm in Allegan county, with buildings thereon insured by defendant company. In 1917 they sold the farm to Marienus Brink and wife on land contract, and assigned the insurance policy to them upon their undertaking in the land contract to keep the buildings insured. The policy was carried in the name of the Brinks as the insured, with a provision therein making loss payable to "the holder of the deed to said property so far as his, her or their contract interest shall appear at time of loss." In 1931, Mr. and Mrs. E. G. Carpenter sold the farm to and assigned their vendors' interest to plaintiffs Ernest A. and Anna Carpenter, and E. G. Carpenter so notified the insurance company and asked if any change in the policy was necessary. In answer thereto he was advised:

"If the deed to the property insured under policy 135 has been changed, it will be necessary for you to make a transfer upon same. We are inclosing herewith a statement of ownership and would ask that you fill it out, being sure to answer all questions, date and sign and return it to us together with the policy and a fee of $1 and we will make the transfer."

This was misinformation, as the insured remained. the contract purchasers and there was no change worked in the terms of the land contract, for the obligation on the part of the Brinks, as vendees, to maintain the insurance for the protection of the vendors continued. Thereupon Mr. E. G. Carpenter, acting in behalf of plaintiffs Carpenter, mailed the policy to the company, together with the mentioned fee and claims that he wrote a letter requesting the company to "send all important mail, such as notices, etc., to me." Defendant denies receipt of any such request.

The secretary of the company, upon receiving the policy, discovered the mentioned misinformation sent out by a clerk and wrote Mr. E. G. Carpenter as follows:

"We are in receipt of your letter of the 7th inst., inclosing policy 135, issued to Marienus Brink and wife. We are returning this policy to you, as it is not necessary to make a transfer on it. We are very sorry for the trouble that we have caused you, but the clerk who took care of this on account of another's illness, was not familiar with this part of the work. We are returning the fee of $1 that you mailed us. We will send Mr. Brink a correction statement for his signature and ask him to return it to us and we will then attach it to his application for insurance and this will show who holds the deed but it is all right for the policy to be in Mr. Brink's name. We trust you will overlook this error."

At that time the plaintiffs Carpenter had sent the defendant a statement of their ownership in connection with "transfer of policy," and, over the signature of Ernest A. Carpenter, stated:

"I accept this insurance subject to the charter, by-laws, rules and regulations of this company now

in force or any amendments therein that may hereafter be in force and that I unreservedly guarantee the payment of all assessments and liabilities under this policy until canceled or transferred to another.''

This was received and retained by the company, but without approval indorsed thereon and without notice or disapproval to Mr. Carpenter, except as stated in the letter that it was not necessary to make the transfer. This was equivalent to saying the transfer was not made. Had the transfer been made then the testimony of the secretary of defendant would be pertinent. He testified:

''If I had approved that he would have been made a joint policyholder and the notices would have been mailed out to him to one address or the other.''

Suppose the company had brought suit against plaintiffs Carpenter to recover the assessment? It is clear it would have been a complete defense to show the letter of defendant's secretary stating that no transfer was necessary and the necessary inference that there had been no approval by the company of the statement sent in by the Carpenters.

Some time after this there was a fire loss and defendant denied liability because the policy had been duly suspended for default of the Brinks in paying an assessment.

The by-laws of the company provide for arbitration of disputes and the Brinks and Mr. and Mrs. Carpenter invoked that remedy. Arbitrators were selected and plaintiffs herein introduced their proofs, inclusive of the claim of right here presented, and the arbitrators found ''in the case of Marienus Brink and wife, policy No. 135,'' the company was not liable. Thereupon plaintiffs filed the bill herein to obtain recovery of the loss.

The plaintiffs Brink have no standing, for their default in paying the assessment is confessed, and suspension of the policy was in due form as to them.

The plaintiffs Carpenter claim that they are not bound by the award of the arbitrators, because their claim was ignored in the finding. Their claim was fully presented by their attorney and the testimony they offered, and it can hardly be said that it was ignored by the finding. It is more reasonable to say the arbitrators found that the Carpenters had no claim apart from the Brinks.

The circuit judge found the Brinks without rights, adjudged the Carpenters not bound by the arbitrators' award, and decreed that the Carpenters were members of defendant company and, as such, were entitled to notice of the assessment and reformed the policy to such effect. Defendant reviews by appeal.

We pass further consideration of the arbitration as, under the evidence, the plaintiffs have made no case.

Defendant is a mutual insurance company. The Brinks were members and liable to assessments. An assessment was levied, notice given to the Brinks, they did not pay and the policy was suspended and notice of suspension given before the fire. The Carpenters were never members of the company, nor were they liable for the assessment and were not entitled, as of right, to notice of the assessment or of suspension of the policy for nonpayment of the assessment. The request by E. G. Carpenter, if made, "to send all important mail, such as notices, etc., to me," did not constitute the Carpenters members of the company; nor obligate them to pay the assessment upon notice thereof. What was in fact done, and all that was needed to be done, was to

provide that any loss under the Brink policy was payable to the Carpenters as their vendors' interest might appear and, of course, this did not constitute them members of the insurance company, nor make them liable for the assessment; nor could they assert right to the insurance after suspension of the policy for default of the Brinks.

At the time of the fire the Brinks were not insured. The insurance, being suspended as to the Brinks, it could not, by estoppel, waiver or subsequent reformation be held payable to the Carpenters, as their vendors' interest might appear. The Carpenters were beneficiaries under the policy but this did not give them right to notice of default by the insured.

In *Zeigler* v. *Kansas Life Ins. Co.,* 120 Kan. 252 (243 Pac. 272, 44 A. L. R. 1367), it was held, quoting syllabus in A. L. R.:

"In the statute requiring a notice to be given by the insurer to the holder of a life insurance policy before it is canceled for nonpayment of premium, the person referred to as the policyholder is not the beneficiary, but the insured, who entered into the contract, and, by its terms, is to pay the premiums."

There was no surrender of the policy or transfer obligating the Carpenters to pay assessments or relieving the Brinks from their obligation to pay. This left the obligation to pay assessments upon the Brinks where the policy placed it, and this was never changed by any different contract between the Carpenters and the company. See *Crank* v. *State Mutual Rodded Fire Ins. Co.,* 239 Mich. 642.

The decree is reversed and the bill dismissed, with costs to defendant.

Potter, C. J., and Nelson Sharpe, North, Fead, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.