MIRUNCZAK v. MICHIGAN FARMERS MUTUAL FIRE INS. CO.

INSURANCE—MUTUAL FIRE POLICY—COMMENCEMENT OF ACTION—EQUALLY DIVIDED COURT.

> In action by holder of contract vendee's interest in premises which had been insured under a mutual fire insurance company's policy containing bylaw printed on the policy that action thereupon must be commenced within 12 months from date of loss, judgment of trial court in dismissing action commenced over 19 months thereafter is affirmed by an equally divided court.

Appeal from St. Clair; Robertson (William), J. Submitted February 3, 1940. (Docket No. 7, Calendar No. 40,785.) Decided April 1, 1940. Rehearing denied June 18, 1940.

Action by Henry Mirunczak and wife against Michigan Farmers Mutual Fire Insurance Company, a Michigan corporation, for sums due on a fire insurance policy. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed by an equally divided court.

*Harry J. Lippman* (*Leslie D. Bloom,* of counsel), for plaintiffs.

*Avery & Covington* (*Streeter & Touma,* of counsel), for defendant.

North, J. On November 7, 1930, fire destroyed a farm dwelling occupied by Mrs. Victoria Mirunczak and members of her family. Because her husband disappeared some years before trial of the case we herein refer to her as plaintiff. At the time of the fire she, or possibly she and her husband, had a contract vendee's interest in the farm property and she had in her possession a fire insurance policy which had been issued on this property to a predecessor in title, Mike Skurko. While it is seriously urged by the defendant fire insurance company that this policy was never properly assigned to plaintiff and therefore she was not the insured thereunder, still for the purposes of this case we may assume, though we do not so hold, that plaintiff was insured in the defendant company at the time of her fire loss. At the conclusion of the proofs defendant's motion for a directed verdict was granted on the ground that plaintiff's suit was not brought within the time limitation provided in the policy. Judgment was entered accordingly and plaintiff has appealed.

On the face of plaintiff's policy it is provided: "that this policy is made and accepted in reference to the foregoing terms, and to the conditions printed

in the charter and bylaws of this company, which are hereby declared to be a part of this contract.'' Bylaw number 9 provides: ''No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the requirements, *nor unless commenced within 12 months next after the date of loss.*''

Notwithstanding the fire occurred November 7, 1930, plaintiff did not institute her suit until June 25, 1932. It may be conceded, as appellant contends, that delay in bringing her suit was induced by promises of the defendant extending over a period of months to pay the loss; and that therefore the defendant should not be heard to urge the running of the limitation period of one year during the time plaintiff was led by defendant to believe her claim would not be contested. But granting appellant's above-noted contention, still under her own testimony at the trial of the case it definitely appeared that the defendant company denied liability in May, 1931. Notwithstanding such denial, plaintiff delayed more than a year thereafter before instituting suit. Such was the condition of the record made in the trial court and upon which the trial judge directed a verdict in favor of defendant. Clearly his ruling was correct and on the record made should be sustained.

After this case was in this court on appeal, appellant filed a petition that she be allowed to supplement the record by taking further testimony which would disclose that she was in error when she testified that the defendant disavowed liability in May, 1931, that instead such disavowal was made in May, 1932. Permission to supplement the record was granted; but our present consideration of the

whole record discloses that this was ill-advisedly done, and we are of the opinion that proper practice necessitates disregard on this appeal of plaintiff's testimony taken after the appeal was perfected and which is wholly contradictory of her testimony given at the trial of the case and on which the trial judge directed the verdict.

It is apparent that the practice pursued by appellant in the instant case, whereby after appeal she was allowed to change her own testimony on a controlling issue, cannot be countenanced. In effect such practice would destroy the record upon which the trial judge made his ruling; and perhaps more important than that, it would deprive the adverse party of meeting and contradicting on the trial of the case plaintiff's testimony. Such a practice would be so obviously improper that it is self-condemnatory. Instead, plaintiff's remedy was to move for a new trial in the circuit court, after obtaining permission of this court so to do. Court Rules Nos. 47, 56, and 66, § 6 (1933 as amended). In so holding, we are mindful that testimony given by other witnesses for plaintiff was produced in the trial court which was inconsistent with her statement that defendant denied liability in May, 1931, and was to the effect such denial was at a much later date. Notwithstanding this, plaintiff was bound by her own testimony. Under the circumstances her subsequent testimony taken to supplement the record on appeal and which contradicts the testimony she gave in the trial court must be wholly disregarded in reaching decision herein.

As above noted, the ruling of the trial court in directing a verdict in favor of defendant was fully justified by the record at the time the order was made, and plaintiff not having sought a new trial,

the order made and the judgment which followed are affirmed.

SHARPE, WIEST, and BUTZEL, JJ., concurred with NORTH, J.

POTTER, J.   Plaintiffs sued defendant to recover on an insurance policy.  From judgment for defendant, plaintiffs appeal, claiming the trial court erred in directing a verdict for defendant.

Defendant contends the suit is barred by the statute and bylaws of the company requiring it to be commenced within 12 months next after the date of loss, and that plaintiffs were never members of the company.

In *Becker* v. *Farmers' Mutual Fire Ins. Co.,* 48 Mich. 610, it was said:

"Existing bylaws are in such cases of mutual insurance very properly regarded as entering into the contract and binding the members and open therefore to inquiry.  But a contract once made with a member cannot differ in its essence from one made with any one else, and he cannot without his consent be brought into changed responsibilities, which import new terms into the agreement itself."

In *Kamm & Schellinger Brewing Co.* v. *St. Joseph County Village Fire Ins. Co.,* 168 Mich. 606, 616, 618, 620, the court discussed the relative rights of parties in a mutual insurance company.  It was held:

"Each member contracts to be liable for the pro rata payment of all such losses, as well as to receive compensation for losses which he may sustain.  Only the property of its members is insured.  The members of the company under the charter consist of all persons holding policies of insurance and who subscribe their names to the copy of the charter and the

bylaws of the company. * * * The contract must be mutual, and the plaintiff must be equally liable for the losses of other members of the company before it can claim that the other members of the company shall be assessed to pay its losses. * * * The principle which lies at the foundation of mutual insurance and gives it its name is mutuality; in other words, the intervention of each person insured in the management of the affairs of the company and the participation of each member in the profits and losses of the business in proportion to his interest."

In that case, a question arose as to the liability under a policy which it was claimed had been assigned. It was said:

"Simply assigning the policy did not revive it. A further thing was necessary to be done, namely, to present the policy thus assigned to the secretary, make application to become a member of the company, and get the consent of the secretary indorsed thereon."

In *Harper* v. *Michigan Mutual Tornado, Cyclone & Windstorm Ins. Co.,* 173 Mich 459, after the loss of plaintiff's property occurred he sent the premium to the company. The court said:

"Baldly stated, plaintiff's proposition is this: That, after his building was destroyed, he could effect an insurance upon it through the wrongful act of the secretary. This is not a case of waiver, and is not governed by the rules laid down in the many cases cited by plaintiff. It is a case where, if plaintiff's contention could prevail, defendant's secretary would be permitted to take $1,500 from the members of this defendant organization and present it to plaintiff. This is not insurance. It is vicarious philanthropy. * * *

"As well might it be claimed that, after a building had been destroyed by fire, the owner thereof could,

after acquainting the agent with the fact, secure a policy which would cover his loss, upon the theory that the insurance company had waived the existence of the building because the agent knew it was already burned.''

In *Brink* v. *State Mutual Rodded Fire Ins. Co.,* 270 Mich. 49, it was said:

''The Brinks were members and liable to assessments. An assessment was levied, notice given to the Brinks, they did not pay and the policy was suspended and notice of suspension given before the fire. The Carpenters were never members of the company, nor were they liable for the assessment and were not entitled, as of right, to notice of the assessment or of suspension of the policy for nonpayment of the assessment. * * *

''At the time of the fire the Brinks were not insured. The insurance, being suspended as to the Brinks, it could not, by estoppel, waiver or subsequent reformation, be held payable to the Carpenters, as their vendors' interest might appear.''

In *Crank* v. *State Mutual Rodded Fire Ins. Co.,* 239 Mich. 642, it was held:

''The opinion of Mr. Justice Stone in the *Kamm Case* (168 Mich. 606) is applicable to this, and leaves nothing further to be said on the subject. In the *Kamm Case* there was an assignment of the policy to the purchaser, but no approval by the secretary. In the case at bar there was no assignment of the policy, and, of course, without it, no approval by the secretary.''

In *McNatt* v. *Patrons' Mutual Fire Ins. Co.,* 210 Mich. 610, it was held the plaintiff could not become a member of the defendant company until the membership fee was paid, nor could she carry insurance without being a member.

In *Leonard* v. *Farmers' Mutual Fire Ins. Co.,* 192 Mich. 230, it was held the charter and bylaws of a mutual fire insurance company are parts of a contract of insurance, and that the officers of the company cannot waive any of the provisions of the charter or the bylaws.

The charter and bylaws of the company required the suit to be instituted upon the policy within one year from the date of the loss. Such suit was not commenced within that time. The important question in this case is whether or not the institution of such suit was waived by the company.

"An agent who is required to write policies, and is authorized to settle the terms of insurance and investigate losses, is a general agent, with authority to waive preliminary proofs of loss. So agents are general agents, where they fully represent the company within a certain district, are authorized to solicit insurance, receive moneys and premiums, issue and renew policies, appoint subagents, and adjust losses." 1 Joyce, The Law of Insurance (2d Ed.), p. 1039, § 395.

The secretary was the general agent of the company. The charter provided:

"The secretary shall be secretary ex-officio of all such meeting (meetings?) when present, but in his absence a secretary *pro tem* may be elected from among the members present. The secretary shall keep all the necessary books and accounts of said company and issue all policies as provided by the board of directors and act as agent of said company during his term of office. He may also appoint subagents. Such subagents shall give a bond of not less than ten hundred dollars, running to the secretary, to be approved by the board of directors, for the faithful accounting and payment to the secretary of

all moneys that shall come into their hands as such subagents.

"Before entering upon the duties of his office, the secretary and treasurer shall each give a bond in such amount as shall be determined by the board of directors. * * *

"The insurance of any member shall cease upon the sale of his or her property insured. * * *

"In all actions or suits at law in which this company may be a party, either as plaintiff or defendant, the secretary shall act for and represent the interests of this company."

In *Friedberg* v. *Insurance Company of North America*, 257 Mich. 291, there were negotiations in relation to the payment of the policy, and it was said:

"The negotiations prior to denial of liability were clearly of a character to induce the plaintiff to abstain from suit * * * and operated as a waiver of the limitation to that extent at least.

"The rule in this State is that, where negotiations for settlement are broken off by the insurer before the expiration of the period of limitation fixed by the policy, and a reasonable time remains for bringing suit before the termination of that period, the insurer may assert the limitation period as a defense. * * * In *Dahrooge* v. *Rochester German Ins. Co.*, 177 Mich. 442 (48 L. R. A. [N. S.] 906), 'over two months' remained of the limitation period of one year when negotiations were finally broken off, held, a reasonable time and that the limitation was a defense. Our attention is called to no case in which we have approved a period shorter than 'about two months' * * * as reasonable. There is abundant discussion of what is and what is not a reasonable time, and we need not add to it."

The property was destroyed by fire November 7, 1930. Suit was not instituted until June 25, 1932.

Plaintiffs' son frequently accompanied his father and mother to Yale for the purpose of interviewing the secretary of the company in relation to the payment of this money. He testified that at the time he went there he was told by the insurance company the insurance was not ready, and that the last time he visited the secretary of the insurance company was about two or three weeks before the last time his father and mother went. Mrs. Mirunczak testified substantially that she went there sometime in May, 1932, and that shortly after that she visited Mr. Lippman, her attorney, who instituted suit. There is testimony the company promised to pay.

An insurer, by negotiating with insured and inducing him to believe that a settlement or adjustment will be effected, waives the provision in the policy. So a promise to pay the amount of the loss constitutes a waiver. And where the parties by negotiations and promises of payment induce the party to believe a settlement may be effected beyond the statutory period, such defense may not be set up in an action brought within the time limited. Where, by the acts and conduct of the secretary, a hope or expectation of the insured appears that the loss will be adjusted, a company cannot raise the question of the period of the statute of limitations having expired. See 26 C. J. p. 481; *Voorheis* v. *People's Mutual Benefit Society*, 91 Mich. 469; *Mastenbrook* v. *United States Accident Ass'n*, 154 Mich. 16; *Westchester Fire Ins. Co.* v. *Dodge*, 44 Mich. 420; *Thompson* v. *Phenix Ins. Co.*, 136 U. S. 287 (10 Sup. Ct. 1019); *Friedberg* v. *Insurance Company of North America*, *supra*.

There is testimony indicating that defendant promised to pay, that plaintiffs were told that the insurance money was not ready. After repeated at-

tempts to procure its payment, they were told that
the company denied liability, after the expiration of
the year in question.   This was a waiver of the
terms of the policy.

It is claimed that by reason of the transactions
between plaintiffs and their predecessors in title to
the property plaintiffs did not become members of
the company and are not entitled to recover upon
the policy.   Plaintiff Victoria Mirunczak testified
they bought the farm of Frank Danielak, that he
assigned the policy; that she took 'the policy of in-
surance to the secretary of the company, told him
they had purchased the property from Danielak, and
that the secretary said this would be all right but
that she was to pay $6, which was paid.   She tes-
tified that subsequently the farm was put in her
name and that she went to see the secretary of the
company, advised him of the transaction, that he
read the policy and said it was all right; that prior
to the time of the loss in question she received notice
of assessment and paid $22.15 or $22.16 to the com-
pany in payment of this assessment, and that she
received a receipt therefor.   Subsequently Mrs. Mi-
runczak transferred the property to the Smith boys
and took back a contract to purchase the farm.
There is testimony that Mrs. Mirunczak and her son
went to the secretary of the company, that she told
him about the deal, showed the secretary of the
company the contract and the insurance policy, and
the secretary of the insurance company said the
policy was all right; that after the loss, plaintiffs
went to see the secretary of the company at the office
in Yale, showed him the policy, and he made out a
paper, a proof of loss, for them to sign and told them
they would get the money because they signed the
paper.   Mrs. Mirunczak testified that frequently

after that she was in the office but was informed the money was not ready; that the last time she was there, more than a year after the loss, she was told the money would not be paid. Then she went directly to Mr. Lippman and suit was instituted shortly thereafter. We think this testimony sufficient to carry the case to the jury.

Judgment should be reversed, with costs, and cause remanded.

Bushnell, C. J., and Chandler and McAllister, JJ., concurred with Potter, J.